**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WB MUSIC CORP.; BUT FATHER I
JUST WANT TO SING MUSIC;
HUNTERBORO MUSIC; UNIVERSAL
POLYGRAM INTERNATIONAL
PUBLISHING, INC.; SONY/ATV
TUNES, LLC; OBVERSE CREATION
MUSIC; NICE HAIR PUBLISHING;
PARTY ROCK MUSIC; YEAH BABY
MUSIC; ESKAYWHY PUBLISHING; UH
OH ENTERTAINMENT; DIVINE MILL
MUSIC; FINGAZ GOAL MUSIC; EMI
APRIL MUSIC INC.; HI MOM I DID IT;
CHEBRA MUSIC; UNIVERSAL MUSIC
CORP.,

          *Plaintiffs-Appellees*,

v.

ROYCE INTERNATIONAL
BROADCASTING CORPORATION;
PLAYA DEL SOL BROADCASTERS;
SILVER STATE BROADCASTING, LLC;
GOLDEN STATE BROADCASTING;
EDWARD R. STOLZ, Esquire,

          *Defendants-Appellants*,

W. LAWRENCE PATRICK,
          *Receiver-Appellee.*

No. 21-55264

D.C. No.
5:16-cv-00600-
JGB

OPINION

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted July 25, 2022
Pasadena, California

Filed August 31, 2022

Before:  A. Wallace Tashima, Paul J. Watford, and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Receivership

The panel affirmed the district court's order denying defendants' motion to discharge a receiver who had been appointed to aid in the execution of a judgment for violations of the Copyright Act.

The district court appointed the receiver and authorized him to sell defendants' property—three radio stations—to generate the funds needed to satisfy the judgment. Contending that they had satisfied the judgment by depositing certain sums with the district court, defendants moved to discharge the receiver, terminate the receivership, and enjoin

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

the sale of the radio stations.  The district court denied the motion, holding that it was within its discretion to prolong the receivership in order to protect other creditors and ensure that the receiver would be paid for his services.

Agreeing with the First Circuit, the panel held that, even assuming defendants satisfied the judgment, it was within the district court's discretion to prolong the receivership.  The panel further held that the district court did not abuse its discretion in denying defendants' motion to terminate the receivership.  The district court offered valid reasons for not terminating the receivership—protecting creditors, permitting the receiver to prepare a final accounting, ensuring that the receiver would be compensated for his time, and seeing to it that obligations incurred during the receivership would be paid.  The panel held that, given defendants' history of nonpayment, the district court acted within its broad discretion.

The panel declined to address, for the first time on appeal, defendants' argument that the receivership was void *ab initio*.

**COUNSEL**

Donald C. Schwartz (argued), Law Office of Donald C. Schwartz, Aptos, California; G. Scott Sobel, Law Offices of G. Scott Sobel, Los Angeles, California; for Defendants-Appellants.

Sharon D. Mayo (argued), Arnold & Porter Kaye Scholer LLP, San Francisco, California; Laura E. Watson, Arnold & Porter Kaye Scholer LLP, Los Angeles, California; Richard H. Reimer, Jackson Wagener, American Society of

Composers, Authors and Publishers, New York, New York; for Plaintiffs-Appellees.

Fred D. Heather (argued), Glaser Weil Fink Howard Avchen & Shapiro LLP, Los Angeles, California, for Appellee Court-Appointed Receiver W. Lawrence Patrick.

---

**OPINION**

TASHIMA, Circuit Judge:

Plaintiffs obtained a judgment against Defendants for violations of the Federal Copyright Act. After Defendants failed to satisfy the judgment, Plaintiffs moved for appointment of a receiver to aid in the execution of the judgment. The district court appointed a Receiver and authorized the Receiver to sell Defendants' property—three radio stations—to generate the funds needed to satisfy the judgment. Defendants eventually deposited certain sums with the district court. Then, contending that they had satisfied the judgment, Defendants moved to discharge the Receiver, terminate the receivership, and enjoin the sale of the radio stations. The district court denied the motion, holding that it was within its discretion to prolong the receivership in order to protect other creditors and ensure that the Receiver would be paid for his services. *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. EDCV 16-600 JGB, 2021 WL 3721342, at *2–3 (C.D. Cal. Mar. 18, 2021).

We affirm. We need not decide whether Defendants satisfied the judgment by depositing certain funds with the district court. Even assuming they did so, we reject Defendants' contention that the district court lacked

discretion to continue the receivership.  Agreeing with the First Circuit, we hold that "it is discretionary and not incumbent upon the court to dismiss the receiver when the debt is discharged."  *Consol. Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 327 (1st Cir. 1988).  We also reject Defendants' contention that the district court abused its discretion in denying Defendants' motion to terminate the receivership.  The district court offered valid reasons for not terminating the receivership—protecting creditors, permitting the Receiver to prepare a final accounting, ensuring that the Receiver would be compensated for his time, and seeing to it that obligations incurred during the receivership would be paid.  Given Defendants' history of nonpayment, the court acted within its broad discretion.

## BACKGROUND

Defendants—Royce International Broadcasting Corp., Playa Del Sol Broadcasters, Silver State Broadcasting, LLC, Golden State Broadcasting, and Edward R. Stolz—are the owners and operators of three radio stations located in California and Nevada.  Plaintiffs—WB Music Corp., But Father I Just Want to Sing Music, Hunterboro Music, Universal Polygram International Publishing, Inc., Sony/ATV Tunes LLC, Obverse Creation Music, Nice Hair Publishing, Party Rock Music, Yeah Baby Music, ESKAYWHY Publishing, Uh Oh Entertainment, Divine Mill Music, Fingaz Goal Music, EMI April Music Inc., Hi Mom I Did It, Chebra Music, and Universal Music Corp.—are the owners of copyrights of certain musical works.  Plaintiffs commenced this action in 2016, alleging that Defendants violated the Federal Copyright Act, 17 U.S.C. § 101 *et seq.*, by broadcasting unauthorized performances of Plaintiffs' musical compositions on their radio stations.

In 2017, the district court granted Plaintiffs partial summary judgment, holding Defendants jointly and severally liable for infringing the copyrights of these musical works. In March 2018, a jury determined that Defendants' acts of infringement were willful and awarded Plaintiffs statutory damages totaling $330,000. In May 2018, the Court entered a judgment awarding Plaintiffs $330,000.

In August 2018, the district court entered an amended judgment in the amount of $1,249,563.46. In addition to the amount awarded previously, the amended judgment included $864,278.75 in attorneys' fees and $55,284.71 in costs. We affirmed this judgment in *WB Music Corp. v. Stolz*, 814 F. App'x 286 (9th Cir. 2020).

In June 2019, following unsuccessful efforts to collect on the judgment, Plaintiffs moved for the appointment of a receiver to facilitate execution on the amended judgment. The district court initially did not rule on Plaintiffs' motion, giving Defendants more time to attempt to obtain the funds necessary to satisfy the judgment. After months in which Defendants had not demonstrated any progress toward raising the funds, Plaintiffs renewed their motion for appointment of a receiver. Plaintiffs argued that Defendants had "admitted that the only assets that they possess that may be sufficient to cover the Amended Judgment entered against them are the broadcast licenses issued by the Federal Communications Commission" ("FCC") for the three radio stations. Accordingly, Plaintiffs asked the court to "(i) appoint W. Lawrence 'Larry' Patrick of Patrick Communications, LLC, as receiver over Defendants radio-station-related assets, including Defendants' Radio Stations' FCC Licenses; and (ii) authorize Patrick to manage and operate the stations until

such time as he can arrange for the sale of their FCC Licenses."

In July 2020, relying on Rules 66 and 69(a) of the Federal Rules of Civil Procedure and California Civil Procedure Code § 708.620, the district court granted Plaintiffs' motion and appointed Patrick as Receiver. The court gave the Receiver "the power and authority to take charge of and manage Defendants' Radio Stations' assets, businesses, and affairs" and to solicit offers for the sale of the stations. The order granted the Receiver fees of $7500 per month, along with a commission on any sale of the stations.

In September 2020, Defendants filed an ex parte application to discharge the Receiver and terminate the receivership, on the ground that "Defendants are now prepared to satisfy the full $1,311,371.67 Judgment ($1,249,563.46 award + $61,808.21 interest), which amount is available in cash deposited in an account owned by Mr. Stolz." On October 9, the district court denied the application, noting that it had "appointed a Receiver only after providing Defendants ample opportunity to sell the radio stations through their chosen broker to satisfy the Amended Judgment, to no avail"; that Defendants had "fail[ed] to provide the necessary documents and items for the Receiver to carry out its duties"; and that Defendants had engaged in "repeated stonewalling, failure to comply with the Court's orders, and inexplicable delay in taking steps to satisfy the Amended Judgment, all of which led the Court to approve the receivership in the first place." The court noted that it was

unprepared to terminate the receivership unless Defendants paid the amended judgment and Plaintiffs' post-judgment costs:

> The Court notes that, given Defendants' repeated failure to comply with the Court's post-judgment orders, the Court has limited confidence in Defendants' commitment to satisfy the Amended Judgment expeditiously. If Defendants wish to attempt to prevent the sale of the radio stations by satisfying the Amended Judgment and other post-judgment costs, they are welcome to do so. The Court will not entertain discharging the Receiver and terminating the Receivership absent evidence of satisfaction of the Amended Judgment.

On October 21, 2020, Defendants filed an ex parte application for an order to compel Plaintiffs to accept payment of the amended judgment. Defendants asserted that they were prepared to wire Plaintiffs an amount sufficient to satisfy the amended judgment, together with post-judgment interest, but that Plaintiffs were refusing to accept payment unless Defendants also agreed to pay Plaintiffs' costs associated with the post-judgment proceedings. On October 29, the district court entered an order granting the motion in part. The court directed Defendants to deposit with the court funds sufficient to satisfy the amended judgment. But the court advised Defendants once again that it would "not terminate the receivership unless and until Defendants pay the full Amended Judgment and all other post-judgment costs. These costs will not be fully calculated until the Court rules on Plaintiffs' pending Fee Motion."

On November 9, 2020, Defendants deposited $1,301,523.16 with the district court, an amount necessary to satisfy the amended judgment through October 13, 2020.

On November 20, 2020, the district court granted Plaintiffs' motion for post-judgment attorney's fees and costs. On January 13, 2021, the court entered a second amended judgment, which included an additional $384,124.20—$17,515.80 in unpaid sanctions and $366,608.40 in post-judgment fees and costs—beyond the amended judgment.

On February 2, 2021, Defendants deposited an additional $384,150.00 with the district court—an amount sufficient to satisfy the second amended judgment. The following day, Defendants filed a motion to discharge the Receiver, terminate the receivership, and enjoin the sale of the radio stations.  Defendants argued that the receivership should be terminated because they had fully satisfied the second amended judgment.

Plaintiffs opposed the motion, arguing that termination of the receivership was premature because, although Defendants had deposited funds with the court, Defendants had refused Plaintiffs' request to stipulate to the release of those funds. Plaintiffs further argued that Defendants should not be permitted to terminate the receivership without ensuring that the Receiver would be compensated for his services.

The Receiver also opposed Defendants' motion to terminate the receivership.   The Receiver argued that terminating the receivership would allow Defendants to evade a range of liabilities.  The Receiver noted, for example, that he had "identified numerous, substantial creditors that Stolz has failed to pay."  One creditor was owed $850,000 in rent

for a tower and transmission site in Las Vegas. Another creditor was owed $175,000 in rent for a tower and transmission site in San Francisco. A third creditor was owed $85,000 in past due royalty payments. And a fourth creditor, Bellaire Tower Homeowners Association ("Bellaire"), held a judgment lien against Defendant Golden State Broadcasting worth in excess of $300,000. The Receiver also pointed out that, in order to carry out his responsibilities as Receiver, he had retained accountants and legal counsel who were owed "hundreds of thousands of dollars" for their services.

Bellaire filed an opposition to the motion to terminate the receivership as well. Bellaire pointed out that it had obtained a judgment against Defendant Golden State Broadcasting in 2014, that the value of the judgment exceeded $300,000, and that the California state court overseeing that judgment had appointed Patrick as receiver. Bellaire argued that terminating the receivership "would impair Bellaire's security interest and otherwise defeat Mr. Patrick's ability to enforce the Bellaire judgment."

The district court denied Defendants' motion to terminate the receivership in a March 2021 order. *WB Music Corp.*, 2021 WL 3721342. The court gave two principal reasons for declining to terminate the receivership—protecting other creditors and ensuring payment of the Receiver's obligations. As to the former, the court explained its reasoning as follows:

> Termination of a receivership is an equitable question, and unfortunately, neither the legal nor the factual equities favor Defendants. The caselaw supports continuation of the receivership. The court in *Consolidated Railroad Corporation* declined

to terminate a receivership where a debt was satisfied until the debts of non-party creditors had been satisfied as well: "In this way the court can ensure that the receiver will not deplete all of the debtor's assets on behalf of one creditor, leaving other creditors without remedy." 861 F.2d at 327–28. In that case, the appellate court affirmed the district court's decision to "retain jurisdiction until it is satisfied that Conrail has collected the funds due to it and that collection thereof by the receiver has not unfairly prejudiced [defendant's] other creditors." *Id.* at 328. That logic, in a nearly identical procedural posture, is applicable to the instant case as well. Defendants owe at least one other creditor a sum that has been reduced to judgment, and Mr. Patrick has been appointed Receiver in that case as well. (*See* Bellaire Towers Opposition.) Under *Consolidated Railroad Corporation*, the Court is within its discretion to prolong the receivership in order to ensure that the satisfaction of the judgments in the instant case has not prejudiced other creditors.

*Id.* at *2. As to the latter, the court reasoned:

[C]ourts normally do not terminate receiverships until the Receiver prepares a final accounting. This makes logical sense: a court must ensure that a receiver will be compensated for his time managing the property of one of the parties. So too in this

case. The Receiver has indicated that he has outstanding bills to collect, and Defendants have indicated that they intend to challenge those amounts. As other district courts in the Ninth Circuit have done, the Court declines to terminate the receivership until those amounts are determined.

The Court is not required to prolong the receivership until these amounts are satisfied; indeed, as Defendants point out, the Court could terminate the receivership at this juncture. However, the factual equities do not favor Defendants. The Court was forced to appoint the Receiver because Defendants failed to satisfy the Amended Judgment for *two years*. The Court simply cannot trust Defendant Ed Stolz's representations that he will satisfy amounts due in the future.

*Id.* at \*2–3 (record citations omitted).

Defendants timely appealed the district court's order. Subsequently, two of the Defendants—Silver State Broadcasting, LLC and Golden State Broadcasting—filed bankruptcy petitions. In accordance with the automatic stay, *see* 11 U.S.C. § 362, we then stayed appellate proceedings (Docket #48) and administratively closed this appeal (Docket #59) as to those two Defendants. *See Cohen v. Stratosphere Corp.*, 115 F.3d 695, 697 (9th Cir. 1997). This opinion and judgment, therefore, apply solely to the non-stayed Defendants. *See Deem v. William Powell Co.*, 33 F.4th 554, 557 n.1 (9th Cir. 2022).

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over an appeal from an interlocutory order refusing to terminate a receivership under 28 U.S.C. § 1292(a)(2). *See Plata v. Schwarzenegger*, 603 F.3d 1088, 1099 (9th Cir. 2010); *FTC v. Overseas Unlimited Agency, Inc.*, 873 F.2d 1233, 1235 (9th Cir. 1989). We review a refusal to terminate a receivership for an abuse of discretion. *See SEC v. Cap. Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) ("A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.").

## DISCUSSION

Defendants challenge the district court's denial of their motion to terminate the receivership on three grounds. They first argue that the receivership is void *ab initio*—null from the beginning—because the Receiver failed to swear an oath or post a bond, as required by California law. They next argue that the district court erred by denying their motion because a district court lacks discretion to continue a receivership once the judgment debtor has satisfied the petitioning creditor's judgment. Finally, they argue that the district court abused its discretion when, after weighing the equities and circumstances of the case, the court declined to terminate the receivership. For the reasons that follow, we decline to reach Defendants' first argument and reject the others.

## I.

Defendants argue that the receivership is void *ab initio* because the Receiver failed to post a receiver's bond or swear

an oath, as required by California Civil Procedure Code § 567, which provides: "Before entering upon the duties of a receiver," a receiver must be "sworn to perform the duties faithfully" and "give an undertaking . . . in such sum as the court or judge may direct." Cal. Civ. Proc. Code § 567(a)–(b).[1]

We decline to address this argument. Under our case law, we ordinarily "will not consider an issue raised for the first time on appeal." *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985). That principle applies here. Defendants did not raise their § 567 argument in the district court, and the district court did not pass upon it. Defendants argue that they may raise the argument for the first time on appeal because "[l]ack of subject matter jurisdiction may be raised by the court or the parties at any time, including after a decision on the merits." Although lack of subject matter jurisdiction may be raised at any time, *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 n.2 (9th Cir. 1988), Defendants do not explain why their § 527 argument should be construed as a challenge to the district court's subject matter jurisdiction. They point out, correctly, that a receiver is considered an officer of the court. *See SEC v. Am. Principals Holding, Inc. (In re San Vicente Med. Partners Ltd.)*, 962 F.2d 1402, 1409 (9th Cir. 1992). But they do not explain how, even assuming that the Receiver failed to comply with § 567, this would have impacted the district court's jurisdiction, and they cite no authority in support of that argument.

---

[1] Although Patrick was appointed by a federal court, the parties assume that the requirements of § 567 apply here. We assume the same for purposes of this opinion without deciding the question.

Because Defendants have forfeited this issue, we need not decide whether the Receiver violated § 567 or whether, if a violation occurred, this would have voided the receivership. In sum, we decline to reach Defendants' voidness argument.

## II.

Defendants argue that they fully satisfied Plaintiffs' judgment by depositing funds with the district court. They further argue that, once they satisfied the judgment, the district court was *required* to terminate the receivership. They contend, in other words, that a district court lacks discretion to continue a receivership once the judgment debtor has fully satisfied the petitioning creditor's judgment.

As a threshold matter, we note that Plaintiffs dispute Defendants' contention that Defendants had fully satisfied Plaintiffs' judgment at the time of the motion to terminate the receivership. For purposes of our analysis, we assume without deciding that Defendants had satisfied the judgment. Because Defendants' argument fails for other reasons, we need not resolve that question.

Defendants' argument is persuasive up to a point. It is true that the primary purpose of a receivership like the one at issue here is to ensure that the judgment debtor satisfies the petitioning creditor's judgment. The receivership statute upon which the district court relied here, for example, states that "[t]he court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method *to obtain the fair and orderly satisfaction of the judgment*." Cal. Civ. Proc. Code § 708.620 (emphasis

added).  It is also true that "[e]quity receiverships should be terminated as soon as the legitimate purposes of the receivership have been accomplished." 3 Ralph Ewing Clark, *Treatise on the Law & Practice of Receivers* § 691, at 1271 (3d ed. 1959).  "When the reason for continuing the receivership has ceased, the property should be discharged and restored to the owner."  *Consol. Rail Corp.*, 861 F.2d at 327 (quoting J. Lucas, J. Moore & K. Sinclair, *Moore's Federal Practice* ¶ 66.04[7] (2d ed. 1988)).  Thus, satisfaction of the petitioning creditor's judgment will ordinarily lead to discharge of the receiver, termination of the receivership, and return of any remaining property to the debtor's possession and control.

This general proposition, however, "is not absolute," 65 Am. Jur. 2d *Receivers* § 94 (2022), and is subject to some important exceptions.  The appointing court may prolong a receivership, for example, for the benefit of other creditors. As the First Circuit has explained, "it is discretionary and not incumbent upon the court to dismiss the receiver when the debt is discharged.  The court 'will, in its discretion, retain such jurisdiction for the benefit of other creditors even though the claim of the petitioning creditors may have been satisfied.'"  *Consol. Rail Corp.*, 861 F.2d at 327 (quoting Lucas, *et al.*, ¶ 66.04[3]).  This principle is firmly rooted in the common law.  As a leading treatise states:

> The right of the defendant to settle and/or the plaintiff to dismiss his petition is not to be abridged.  With the exercise of these rights, the court has but little concern, but neither the settlement by the defendant, nor the dismissal of his suit by the plaintiff, operates to discharge the receiver, ipso facto or to take

> the fund in his hands out of the control and possession of the court. That can only be done by an order of the court, which will not be granted until it has been made satisfactorily to appear that the interests of the creditors of the defendant and other third persons will not be prejudiced. If the receiver has been directed to sell property of the defendant, the dismissal of the main suit by the plaintiff does not operate to discharge the receiver or to otherwise dispose of the said property. Where in such a case the holder of a lien, or other creditor of the defendant, before the receiver has been ordered to surrender the assets in his hands, makes a claim thereto, the court may, notwithstanding the dismissal of the original suit, retain jurisdiction of the property or fund under a proper petition of the creditor or creditors.

3 Clark, *supra*, § 695, at 1278 (footnote omitted).

A court, moreover, must ensure that a receivership is terminated in an orderly fashion. As the Clark treatise explains:

> When a receivership is predicated upon a claim, lien or charge of the party at whose instance the receiver is appointed, and this claim, lien or charge is satisfied, the receivership must terminate. However, the appointing court must retain jurisdiction of the res long enough to close up the receivership in an orderly fashion and see that

>   all the receivership claims are properly paid or
>   taken care of or provide for the same.

*Id.* § 695 at 1280 (footnotes omitted). Among other things,
"[t]he appointing court pledges its good faith that all duly
authorized obligations incurred during the receivership shall
be paid." 2 *id.* § 637, at 1052. Indeed, "payment of
receiver's fees and receiver's counsel fees . . . are a first
charge on the funds or property in the court's possession and
control." *Id.*; *accord* 65 Am. Jur. 2d *Receivers* § 146 (2022).
The appointing court's tasks include "the fixing of the
receiver's fees, distribution generally of the money in his
hands, accepting of the receiver's final report," 3 Clark,
*supra*, § 693, at 1277, and ensuring that "all duly authorized
obligations incurred during the receivership shall be paid,"
2 *id.* § 637, at 1052. "However and whenever a receivership
ends, the trial court must conduct the necessary proceedings
to discharge the receiver," including: "[a] final accounting
submitted by the receiver and approved by the court and the
fixing of the amount of the receiver's fees and ordering them
paid"; "restoration of the property held by the receiver to the
owner of the property"; and "an order entered by the trial
court discharging the receiver." *Humble Expl. Co. v. Walker*,
641 S.W.2d 941, 945 (Tex. App. 1982).

The appointing court's obligation to carry out these tasks
must be balanced against the debtor's interest in return of its
property. "[A] receivership may interfere seriously with
defendant's property rights by ousting him or her from
control, and sometimes even possession." 12 Charles Alan
Wright & Arthur R. Miller, *Federal Practice and Procedure*
§ 2983 (3d ed. 2022). Accordingly, courts should exercise
caution in prolonging a receivership, just as they do in
creating one. *See Can. Life Assurance Co. v. LaPeter*,

563 F.3d 837, 844 (9th Cir. 2009) ("[A]ppointing a 'receiver is an extraordinary equitable remedy,' which should be applied with caution." (quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993))). Extension of a receivership, moreover, need not be an all-or-nothing proposition. Where appropriate, "[a] court may release certain property from its control and possession and the control and possession of its receiver and discharge the receiver as to that property, but retain other property subject to its orders." 3 Clark, *supra*, § 695, at 1280.

In sum, we reject Defendants' contention that a district court lacks discretion to prolong a receivership once the judgment debtor has fully satisfied the petitioning creditor's judgment. The authorities are uniformly to the contrary.

### III.

"The decision on whether to terminate a receivership turns on the facts and circumstances of each case, including any relevant equitable considerations, particularly absent any statutory limitations on the court's power to terminate a receivership." 65 Am. Jur. 2d *Receivers* § 94 (2022) (footnote omitted). Accordingly, we will not lightly set aside a district court's decision on whether to terminate a receivership. As we observed in *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986), "a district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad."

Although Defendants contend that the district court abused this broad discretion here, we cannot agree. The district court denied the motion to terminate the receivership

for legitimate reasons—to protect creditors, to permit the Receiver to prepare a final accounting, to ensure that the Receiver would be compensated for his time, and to ensure that obligations incurred during the receivership would be paid. *WB Music Corp.*, 2021 WL 3721342, at *2–3. The court also reasonably concluded that "the factual equities do not favor Defendants." *Id.* at *3. Given Defendants' history of nonpayment, the court understandably declined to "trust Defendant Ed Stolz's representations that he will satisfy amounts due in the future." *Id.* The court, moreover, took a measured approach. In a June 2, 2021 order, the court advised Defendants that it would terminate the receivership if Defendants satisfied the judgment and settled the Receiver's accounts. This approach was reasonable and appropriate.

In sum, the district court did not abuse its discretion in denying Defendants' motion to terminate the receivership. Accordingly, the district court's order is **AFFIRMED**[2].

---

[2] The pending motions for judicial notice (Docket #54) and to file a combined reply brief (Docket #62) are **GRANTED**.